SCHAUER, J.
On or about the 28th day of February, 1936, at approximately 11:45 P. M., an automobile owned by plaintiff and, with its consent, being operated by one Hubert Lejeune, as rentee, was by the latter driven into defendant’s *Supp. 784 auto park at 743 South Spring Street, in Los Angeles. Defendant’s employee, Liles, accepted such automobile for parking, asked and received from the driver, Lejeune, the sum of 15 cents as a fee therefor, and gave to him a portion of a parking ticket bearing an identifying number. This transaction constituted a bailment for hire. (Beetson v. Hollywood Athletic Club, (1930) 109 Cal. App. 715, 718 [293 Pac. 821].) Lejeune immediately left the parking lot and upon returning within the next forty minutes found that the lot was dark, no attendant was present and plaintiff’s automobile had disappeared. Several days later the car was recovered, having been stripped of all removable parts, and abandoned. Plaintiff seeks to recover its reasonable costs laid out in pursuing, recovering and reconditioning such automobile. The complaint is in two alternative counts, one alleging the plaintiff’s damages as a result of defendant’s asserted negligence and the other setting up the same damages as arising from a breach of a bailment for hire. The trial court found for defendant and plaintiff prosecutes this appeal, maintaining in effect that as to count I the admitted or undisputed evidence establishes defendant’s negligence as a matter of law and that upon the theory of count II, on proof by plaintiff of the fact of bailment and subsequent failure to deliver possession of the property on demand, the law imposed on defendant the burden of proving that such failure was occasioned, without negligence on its part, by causes reasonably beyond its power to control; that the defendant failed as a matter of law to discharge the burden of proof so imposed on it.
The law governing the burden of proof in such cases as those presented by the two counts now before us has been heretofore discussed by this court in an unpublished opinion, prepared by Presiding Judge Shaw, which we now adopt in part in expression of our views herein. “The complaint contains sufficient allegations to state a cause of action for conversion of plaintiff’s automobile by defendant, a bailee thereof. Where such a cause of action is stated the plaintiff makes a sufficient prima facie showing by proof of the bailment and subsequent refusal of defendant, on demand, to make delivery according to the contract, and this casts on the defendant the burden of explaining his refusal. (Wilson v. Southern Pac. R. R. Co., 62 Cal. 164, 172; Cussen v. South *Supp. 785 ern Cal. Sav. Bank, 133 Cal. 534, 537 [65 Pac. 1099, 85 Am. St. Rep. 221] ; Taussig v. Bode & Haslett, 134 Cal. 260, 263 [66 Pac. 259, 86 Am. St. Rep. 250, 54 L. R. A. 774] ; Dieterle v. Bekin, 143 Cal. 683, 688 [77 Pac. 664] ; Wilson v. Crown Transfer etc. Co., 201 Cal. 701, 706 [258 Pac. 596] ; Boot v. Skirving W. Co., 202 Cal. 75, 78 [259 Pac. 81] ; Atwood v. Southern Cal. Ice Co., 63 Cal. App. 343, 346 [218 Pac. 283] ; Greer v. Los Angeles Athletic Club, 84 Cal. App. 272, 283, 284 [258 Pac. 155] ; Ferguson v. Green, 99 Cal. App. 641, 643 [278 Pac. 1058].) According to some eases, as soon as it appears that the property has been stolen or destroyed by fire the burden shifts to plaintiff to show that negligence of defendant caused or contributed to the loss. (Wilson v. Southern Pac. R. R. Co., supra; Taussig v. Bode & Haslett, supra; Atwood v. Southern Cal. Ice Co., supra; Perera v. Panama Pac. I. E. Co., 179 Cal. 63, 64 [175 Pac. 454] ; England v. Lyon etc. Co., 94 Cal. App. 562, 567 [271 Pac. 532].) But it now seems settled that where the plaintiff’s action is strictly one of conversion, or upon the contract for failure to redeliver the property, the defendant must justify his failure, and if he relies upon the proposition that the property was lost by theft or fire without negligence on his part, the burden is on him to prove these facts, including his lack of negligence, in order to rebut the prima facie case of plaintiff. (Cussen v. Southern Cal. Sav. Bank, supra; Dieterle v. Bekin, supra; Wilson v. Crown Transfer etc. Co., supra (which overrules Atwood v. Southern Cal. Ice Co., on this point); Greer v. Los Angeles Athletic Club, supra; Ferguson v. Green, supra.)
“Under the rule settled in Wilson v. Crown Transfer etc. Co., if plaintiff alleges a loss by fire or theft, and charges this was due to defendant’s negligence, the burden is on plaintiff to prove such negligence. See, also, Wilson v. California C. R. R. Co., 94 Cal. 166, 172 [29 Pac. 861, 17 L. R. A. 685], So it seems that the answer to the question, on whom is the burden of proof as to defendant’s negligence, depends on the pleadings.” It follows, therefore, from the form of the complaint in this case, that as to count I the burden of proving negligence is on the plaintiff, while as to count II, the bailment and failure or inability to redeliver upon demand being admitted, the burden devolved on the defendant to establish its own lack of fault in the premises. If defendant prevails as to count II, obviously plaintiff cannot make *Supp. 786 out a case on count I. Hence we consider the case as arising upon count II first.
Since the trial court rendered judgment for defendant, and since written findings of fact were waived, we are bound to assume that every issue tenable to decision under the evidence and pleadings was resolved in favor of defendant. Material to the case are the terms of the contract of bailment. Admittedly no word was spoken by either party to the transaction when plaintiff’s automobile was left with defendant’s attendant (except perhaps to state the parking fee), but defendant seeks by three avenues to introduce into the contract an agreement that its responsibility as bailee should terminate at 12 o’clock midnight. The three avenues sought to be traversed by defendant are as follows•
First, defendant calls our attention—while conceding that it did nothing to direct Lejeune’s attention—to a small sign appearing inconspicuously (according to a photographic exhibit) on the north side of its lot, reading ‘ ‘ Close 12 P. M. ’ ’. The striking contrast in size and prominence of display accorded by defendant to signs advertising its name and business as measured with the physically modest and psychologically comparatively concealed words “Close 12 P. M.”, as to this phase of the defense, suggests an effort on defendant’s part technically to comply with a city ordinance mentioned in the testimony as requiring the posting of a stated closing time rather than ordinary care in good faith to acquaint its customers with the fact that their ears would be left unlocked (or with keys equally available to thief and owner) and unattended after midnight. Likewise the other signs reading “15c Till Midnite” and “50e extra for locked ears”, in their substance and manner of display, are not well calculated to give any actual notice to potential bailors of facts material here. There is no evidence tending to show that Lejeune saw any of the signs referred to and he testified positively that he did not see them. We do not find, in the circumstances disclosed by the record in this case, that defendant has sustained the burden assumed by it of establishing as a term of the bailment contract the substance of any closing sign posted on the parking lot.
As a second method of establishing a contractual limitation in the conceded bailment, defendant produced evidence sufficient to establish that there was a general, but not uni *Supp. 787 versal, custom or usage (for definitions and distinction see 25 Cal. Jur., p. 418) prevailing in Los Angeles for parking stations, of the type with which we are here concerned, to close at or before 12 midnight; such evidence also would have warranted the trial court in finding that plaintiff but not the rentee Lejeune, was familiar with that custom. Since Lejeune was not shown to have been engaged in the parking of automobiles as a business and as the cústom or usage was not universal, he is not bound by the same in the absence of evidence that he had knowledge of it. (Lynch v. Bekins Van & Storage Co., (1916) 31 Cal. App. 68, 71 [159 Pac. 822].) Plaintiff's rights in this case, as the owner of the automobile, are no less than those of its rentee, Lejeune.
As its third ground for contending that its responsibility as bailee was limited by special contract, defendant points out that at the time of the inception of the bailment Lejeune was handed a “parking ticket” or “claim cheek” containing, among other printed matter, the following words: [in red ink] “743 So. Spring St. [in black ink] We Close [in red ink] 12 P. M. [in black ink] NOT RESPONSIBLE FOR CARS AFTER CLOSING TIME.” Defendant admits that nothing was said or done, beyond the mere fact of handing him the piece of cardboard, to direct Lejeune's attention to such printed matter or any portion thereof. There was, however, evidence that the parking lot was well lighted (by four 1,000 watt lamps and some forty-five 60 watt lamps) and that Lejeune accepted without objection and retained such ticket. The trial court impliedly found that the circumstances disclosed afforded him a reasonable opportunity to read the printed matter thereon and accordingly that he became bound by it as a part of the bailment contract. Regarding a receipt given by the proprietor of a warehouse the Supreme Court said: “It was the duty of respondents to take note of its contents, if they had the opportunity, and their opportunity was .ample. The presumption, therefore, is that they did read it.” (Taussig v. Bode & Haslett, (1901) 134 Cal. 260, 266 [66 Pac. 259, 86 Am. St. Rep. 250, 54 L. R. A. 774].) In Curtis v. United Transfer Co., (1914) 167 Cal. 112, 114 [138 Pac. 726], the Supreme Court said, “It is true as a general rule, that a shipper or consignor who accepts a bill of lading or receipt containing the terms of a contract of carriage from the carrier without objection *Supp. 788 assents to it and is bound by its terms whether he has knowledge of them or not under the rule of constructive notice.” On the same general subject the District Court of Appeal for the First Appellate District, Division Two, speaking through Presiding Justice Langdon (now Associate Justice of the California Supreme Court) stated the rule as follows: “A great number of contracts are made by the delivery by one of the contracting parties to the other of a document in a common form, stating the terms by which the person delivering it will enter into the proposed contract. If the form is accepted without objection by the person to whom it is tendered, this person is, as a general rule, bound by its contents, and his act amounts to an acceptance of the offer made to him, regardless of whether he reads the document, or otherwise informs himself of its contents.” (Cunningham v. International Com. Y. M. C. A., (1921) 51 Cal. App. 487, 490 [197 Pac. 140].)
Upon the above-mentioned evidence, we cannot say as a matter of law that the trial court was unjustified in its implied finding that by the contract of bailment it was agreed (impliedly) that defendant’s responsibility as bailee should cease upon the closing of its park at 12 midnight. In Kaye v. M’Divani, (1935) 6 Cal. App. (2d) 132, 135 [44 Pac. (2d) 371], it is declared “That the responsibility of a gratuitous bailee or a bailee for hire can be diminished or increased by contract is settled.” See, also, Klein v. Baker, (1931) 112 Cal. App. 157, 162 [296 Pac. 631] ; Ambassador Airways, Inc., v. Frank, (1932) 124 Cal. App. 56, 63 [12 Pac. (2d) 127], Defendant’s representative, Liles, testified that plaintiff’s automobile was still on the lot when he turned off the lights and left at approximately 12:20 on the morning of February 29, 1936. This evidence is legally sufficient to support the implied finding that defendant fully discharged the terms of its contract.
The judgment is affirmed, respondent to recover its costs of appeal.
Shaw, P. J., and Shinn, J., pro tern., concurred.