## TRANSCONTINENTAL AIRPORT OF TOLEDO v OGDEN

Ohio Appeals, 6th Dist, Lucas Co

No 2605. Decided Jan 18, 1932

Messrs. Tracy, Chapman & Welles, and Frank A. Harrington, Toledo, for plaintiff in error.

Messrs. Kirkbride, Boesel, Frease & Cole, Toledo, and Mr. S. Geismar, and Arthur H. Ewald, Cincinnati, for defendant in error.

RICHARDS, J.

The plane was destroyed while being flown by Ted Hay in what is claimed to have been a test flight. The second defense avers only that Harold A. Speer, who had left the plane with the airport company, authorized Hay to test the plane by flying. If Speer was authorized to give such authority and did give it to Hay, the court was in error, but we find no evidence in the record that Speer had authority to permit any person to fly the plane or that he authorized Hay to fly it.

Ogden, who owned the plane, was about leaving Cincinnati for California and before going authorized Speer to use the plane in seeking to dispose of the assets of a company in which he was interested and of course empowered him to have any necessary repairs made. On a return flight from Jackson, Michigan, and Detroit, Speer stored the plane at the Toledo airport because of zero weather causing the oil to congeal. His tentative arrangement with Hay to fly the plane to Cincinnati was only to become effective in the event that he received permission from Ogden and in the event that he transmitted that authority to Toledo by Wednesday night, January 16th. He did not receive authority from Ogden and did not, after his return to Cincinnati, communicate with any one at the airport. Wednesday morning Hay, with the assistance of Harmon, who was manager of the company, took the plane out of the hangar and flew it, claiming that it was being done to test the plane before flying it to Cincinnati.

In the face of the positive direction of Speer that the plane was not to be flown by any one except himself without the consent of Ogden and that no authority had come from Ogden, they had no right to fly the plane in order to determine whether it was in condition for a possible prospective trip.

No mechanical trouble existed with the plane, the only difficulty having been that the oil congealed two or three days earlier during zero weather. The evidence shows that the plane could have been tested while setting on the ground with the engine running. Clearly the temperature on Wednesday was much warmer than on Sunday and Monday, for there was a low-lying fog and other planes had no difficulty in flying because a group of them arrived that morning at the airport for the purpose of transporting a large quantity of airmail. If the contention of the airport company is correct, the owner of an airplane would be in a very unfortunate situation if, without any authorization from him, his agent to operate it could allow others to fly the plane, or if, being stored at an airport on account of zero weather, the airport company, having knowledge of his lack of authority, could authorize and aid a stranger to fly the plane. What the owner sought to guard against was having anybody except Speer fly the plane for any purpose and the owner was entitled to that protection. A test flight would be as dangerous, from the standpoint of the owner, as any other flight.

We do not find the judgment to be excessive.

Judgment affirmed.

LLOYD and WILLIAMS, JJ, concur.