CHARLES B. WHITEHEAD, Plaintiff, *v.* JAMES W. JOHNSON, Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, January 12, 1934.

*Leo Preston Rood,* for the plaintiff.

*John Preston Phillips,* for the defendant.

GENUNG, J. Plaintiff and defendant are both licensed pilots. On June 9, 1933, defendant hired an aeroplane from plaintiff for a short flight. At the conclusion of the flight, when defendant was about to land, the aeroplane went into a nose dive at an altitude of about thirty-five feet from the ground, and the plane was damaged.

The action is brought by plaintiff for the damage done to the aeroplane and for the rental thereof.

The aeroplane in question was an open piane, with two cockpits. It had facilities for control in both cockpits. The evidence satisfactorily establishes that the aeroplane had an appreciable tendency toward nose-heaviness when operated from the front cockpit, without a passenger in the rear cockpit. The nose-heaviness was counteracted when both cockpits were occupied.

On the day in question defendant apprised plaintiff of his desire to take the aeroplane up for a short flight. There is a dispute as to the rental agreed upon. I find that the rental agreed upon was seven dollars per hour, and that defendant is, as to this phase of the case, liable for fourteen dollars for the rental of the aeroplane.

Defendant testified that while the aeroplane was being fueled, he made a thorough examination thereof. He further testified that seeing no " stick " (which is the operating lever or control of the aeroplane) in the front cockpit, he was about to remove the " stick " from the rear cockpit and install it in the front cockpit when plaintiff informed him that there was a special " stick " for the front cockpit, which plaintiff produced from the baggage compartment. Defendant then discovered that the " stick " in the front cockpit was not secured by a bolt. Calling this to the attention of the plaintiff, defendant testified that he was informed that no bolt was necessary.

Plaintiff denied that he had supplied a " stick " for the front cockpit to the defendant. Plaintiff denied knowledge that the " stick " in the front cockpit was not fastened by a bolt. He further stated that he informed the defendant of the nose-heavy tendency of the craft and suggested to him that he drive the aeroplane from the rear cockpit, putting the passenger in the front cockpit; and that in any event the defendant should not operate the plane from the front cockpit in the absence of a passenger in the rear. This admonition is denied by the defendant.

Admittedly, the defendant dropped off his companion or passenger at the Newark airport. He had made the trip to the Newark airport, riding in the front cockpit, with his companion or passenger in the rear cockpit. After leaving his companion at the Newark airport, defendant flew on alone on the return trip to Floyd Bennett field. He continued, however, to ride in the front cockpit. Approaching Floyd Bennett field, defendant made a series of manoeuvres with the aeroplane, preparatory to landing, and straightened out for his final turn. At an altitude of thirty-five or forty feet, just as he was clearing the fence of the airport, " the stick came out." He testified: " The plane was slightly nose-heavy without

the passenger in the rear. The plane being nose-heavy, the nose fell abruptly until the ship was in a dive, approximately a vertical dive. In the fraction of a second, I got the stick back in the socket and just before we struck, I pulled back and broke the angle of approach to about 30 degrees. At the same time I cut the switch. The plane struck at an angle of about 30 degrees."

Considerable attention has been devoted by counsel to the question whether the damage was caused by the coming out of the " stick " or by the nose-heaviness of the aeroplane. The plane was nose-heavy when operated from the front cockpit, with no one in the rear cockpit. I am persuaded that this tendency of the plane was known to the defendant. I am persuaded, moreover, that the admonition testified to by the plaintiff was in fact given to the defendant. The defendant chose to make the trip from the Newark airport in the front cockpit when he might have done so in the rear cockpit. He chose to ride in this position, knowing that the " stick " was loose and knowing that his presence in the front cockpit, with no counterbalancing or counteracting weight in the rear cockpit, was an imminent source of injury to himself, and damage to the plane which had been intrusted to his custody. For aught that appears in the testimony, the " stick " in the rear cockpit was securely attached. In any event, it was testified that the pulling out of the " stick," if an aeroplane is properly stabilized, does not necessarily mean a crash at an altitude of thirty-five or forty feet, since the pilot might, by giving the plane full throttle, impart an upward thrust to it and thus afford himself an opportunity to reattach the " stick " and re-establish control.

In the final analysis, the case is one where a bailee has damaged the corpus of the bailment by disregarding the instructions of the bailor. It was anciently held that where a bailee runs a horse which the bailor has forbidden him to run, the bailee must respond for the damage if the horse falls dead or is injured while being run. In such cases " the misuse or wrongful deviation of the hirer is treated as the occasion for the loss or damage " (Schouler Bailments, p. 59, § 139.) The general rules of bailment apply to aircraft (See *Transcontinental Aircraft of Toledo* v. *Ogden*, 41 Ohio App. 203; *Ambassador Airways* v. *Frank*, 124 Cal. App. 56; 12 P. [2d] 127), just as they do to motor cars and to horses. " The principle * * * does not change, but the things subject to the principle do change." (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382, 391.)

To be sure, defendant was not an insurer of the craft which he hired. He was bound, however, to heed the instructions of the plaintiff. The proximate cause of the damage was the violation of these instructions.

Judgment for plaintiff for $264. Decision filed. Five days' stay.